UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREA FOUCHER, KATHY POTEMPA and
JACQUELINE BEAMAN, individually and as
class representatives for all similarly situated
current and former employees of Kraft Foods
Global, Inc.

                    Plaintiffs,          Case No. 2:08-CV-14896
                                          PAUL D. BORMAN
                                          UNITED STATES DISTRICT JUDGE

v.

KRAFT FOODS GLOBAL, INC.,
a Delaware Corporation,

                    Defendant.
_____/

OPINION AND ORDER
(1) GRANTING DEFENDANT KRAFT FOODS GLOBAL, INC.'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT AND GRANTING SUMMARY JUDGMENT; AND
(2) DENYING DEFENDANT KRAFT FOODS GLOBAL INC.'S MOTION FOR
SANCTIONS

      Now before the Court are Defendant Kraft Foods Global Inc.'s ("Kraft") Motion to Dismiss

the Complaint and/or for Enforcement of the Settlement Agreement (Dkt. No. 17) and Kraft's

Motion for Sanctions Under Rule 11 of the Federal Rules of Civil Procedure (Dkt. No. 23).  A

hearing was held on November 18, 2009.  For the following reasons, the Court GRANTS Kraft's

Motion for Enforcement of the Settlement Agreement and for Summary Judgment and DENIES

Kraft's Motion for Sanctions Under Rule 11.

**I.**      **BACKGROUND**

1

Plaintiffs Andrea Foucher, Kathy Potempa and Jacqueline Beaman ("Plaintiffs") filed their class action complaint against Kraft on November 21, 2008 alleging that Kraft violated 29 U.S.C. §§ 201 et seq., the Fair Labor Standards Act ("FSLA") and 29 U.S.C. §§ 1001 et seq., the Employment Retirement and Securities Act ("ERISA") by "failing to pay overtime compensation at a minimum of one and one-half times their regular rate." (Compl. ¶ 7.) Plaintiffs bring their class action complaint under FSLA specifically pursuant to 29 U.S.C. § 216 and their class claim under ERISA pursuant to Federal Rule of Civil Procedure 23. (Compl. ¶¶ 18-27.) Both the FSLA and the ERISA claims are based upon Plaintiffs' allegation that they were not properly compensated for all of the hours that they worked.[1]

The gravamen of both of Kraft's motions is that the Plaintiffs agreed to dismiss their overtime FLSA and ERISA claims several months ago when Plaintiffs' attorney placed a statement on the record, at a deposition related to this proceeding, that the claims asserted in the Complaint against Kraft likely had no basis in law, that further pursuing them may be sanctionable conduct, and agreeing to dismiss these claims with prejudice. (Kraft Mot. Sanctions 1, 8-10.) At that time, Kraft asserts, the parties memorialized all of the material terms of their agreement in a "Dismissal Agreement" transcribed by the court reporter who was present for the previously-scheduled deposition of Plaintiff Foucher. Despite this recorded agreement, Plaintiffs now deny that they agreed to dismiss their claims or that they conceded that their claims lacked merit.

---

[1] On January 28, 2009 the parties filed a Joint Scheduling Order in which they agreed to conduct discovery in the case in two phases: phase one - focusing on the claims of the three named Plaintiffs and the overtime issues as they relate to those three plaintiffs; and phase two - if needed, which would focus on the other plaintiffs within the purported class. (Dkt. No. 7 ¶ 3.) The parties are still in phase one and the Court has not certified a class.

### A.    The Underlying Claim

Kraft sales representatives in Michigan earn a weekly base salary plus bonuses and overtime for any hours worked over 40 in a workweek (the "Salary Plus" system).  (Pls.' Resp. Ex. 8.) Overtime under the Salary Plus system is calculated based upon hours actually worked.  (Pls.'s Resp. Ex. 9.) Kraft calculates overtime for its sales representatives using the fluctuating workweek method outlined in 29 C.F.R. § 778.114 ("FWW method"), a widely accepted method of calculating overtime for employees who are paid a fixed salary and whose hours of work fluctuate on a weekly basis.  (Kraft Mot. Sanctions 3.)  The regulation requires that four conditions be satisfied before an employer may avail itself of the FWW method: (1) the employees hours must fluctuate; (2) the employee must receive a fixed salary that does not vary with the number of hours worked during the week (excluding overtime premiums); (3) the fixed amount must be sufficient to provide compensation every week at a regular rate that is at least equal to the minimum wage; and (4) the employer and employee must share a "clear mutual understanding" that the employer will pay that fixed salary regardless of the number of hours worked.  29 C.F.R. § 778.114(a), (c).

When Kraft's counsel explained the FWW method to Plaintiffs' counsel shortly after receiving the Complaint, Plaintiffs' counsel admitted that he had never heard of the FWW method and Kraft's counsel sent Plaintiffs' counsel information on the widely-accepted use of the FWW method.  (Kraft Mot. Sanctions 3, Ex. B.)  Plaintiffs' counsel then asked Kraft's counsel about Kraft's bonus system and paid vacation days, again obtaining informal discovery from Kraft as to Kraft's methods of calculating bonuses and paying employees for vacation days.  (Kraft Mot. Sanctions 3, Exs. C, D, E.)  Despite having received Kraft's explanatory materials, Plaintiff continued to allege, in its Rule 26(a) initial disclosures filed on February 10, 2009, that "Kraft's

practice did not qualify it to provide overtime by the [FWW method]." (Kraft Mot. Sanctions Ex. F.) On May 21, 2009, Plaintiffs filed a motion to compel further documentation of Plaintiffs' wage records (as to which Kraft's concurrence was never sought pursuant to E.D. Mich. LR 7.1(a)) which Plaintiffs later withdrew based upon Kraft's explanations to Plaintiffs' counsel that they had fully complied with Plaintiffs' discovery requests. (Kraft Mot. Sanctions 5, Exs. G, H, I.) Kraft then obtained answers to interrogatories in which Plaintiffs continued to assert that they did not receive a fixed, weekly salary under Kraft's compensation system and were, therefore, improperly denied overtime wages under the FWW method. (Kraft Mot. Sanctions 7, Exs. K, L.) Plaintiffs appeared to be arguing that Kraft's method of deducting hours from an employee's bank of paid vacation, holiday and sick pay to pay a full salary in weeks where an employee worked fewer than 40 hours resulted in a "non-fixed" regular salary.

Kraft's principal counsel, from California, traveled to Michigan to proceed with the scheduled depositions of the Plaintiffs on June 4, 2009. The first deponent was Plaintiff Foucher who conceded in her deposition, upon close examination of her pay stubs, that she was in fact paid a fixed amount each week, although in some instances the amounts were comprised not just of regular pay for hours actually worked but also of amounts pulled from banked hours of paid vacation, sick and holiday leave. (Kraft Mot. Sanctions 7, Ex. M, Foucher Dep. 128:19-129:8.) Counsel for Kraft explained to counsel for Plaintiffs that this was a well accepted method of proceeding under the fixed-salary FWW method, and provided Plaintiffs' counsel with the legal authority for Kraft's position.

## B.      The Settlement[2]

Plaintiffs' counsel returned to the deposition after the lunch break that day and explained on the record that he had reviewed the authority provided by Kraft's counsel, and had done some independent research, which confirmed that the law did not support Plaintiffs' overtime claims. Plaintiffs' counsel explained that, therefore, he was agreeing to dismiss the overtime claims under both FLSA and ERISA.  (Kraft Mot. Sanctions 8-10.)[3]

---

[2] Plaintiffs allege in their Response that Kraft's counsel had the court reporter place the title "Dismissal Agreement" on the transcript, thereby "altering evidence" in an effort to mislead. (Pls.'s Resp. 13-14.)  Kraft states that this legend was placed on the transcript independently by the court reporter and denies having asked her do so.  *See* Declaration of Kraft's counsel, Samantha Hardy. (Kraft Reply, Ex. 1, Hardy Decl. ¶¶ 13, 14.)  The Court does not rely on the title to the transcript as evidence supporting Kraft's motion.

[3] While this Court need not decide the legality of Kraft's utilization of the FWW method for purposes of enforcing the parties' agreement to settle this case, it is difficult to see the merit in Plaintiffs' argument.  The gravamen of Plaintiffs' claim is that Kraft did not pay Plaintiffs a fixed, weekly salary under Kraft's compensation system and that Plaintiffs were, therefore, improperly denied overtime wages under the FWW method.  (Kraft Mot. Dismiss 6, Exs. K-L.)  The FWW method of calculating overtime requires that employees be paid a fixed salary for each week of work, regardless of the number of hours actually worked.  *See* 29 C.F.R. § 778.114.  At the deposition of Ms. Foucher on June 3, 2009, Kraft's counsel examined Ms. Foucher at length on each of the pay stubs that Ms. Foucher had produced as responsive on her claims under FSLA and ERISA, and confirmed with Ms. Foucher that she had in fact received a fixed, weekly salary for each week of work.  (Kraft Mot. Dismiss Ex. M, Foucher Dep. 128:19-129:8.)  For most of the weeks involved, Ms. Foucher worked fewer than 40 hours, but received her full fixed salary in a combination of regular pay and deductions from banked hours of vacation, holiday and sick pay. (Pls.' Resp. Ex. 2.)  As explained in the Declaration of Samantha Hardy, and as Ms. Hardy explained to Plaintiffs' counsel at Ms. Foucher's deposition, Kraft's method of deducting from an employee's accrued leave bank when an employee misses a day of work does not violate the FWW method and was, and has been, permissible under the FWW method for at least 15 years.  (Kraft's Reply to Mot. Dismiss Ex. 1 ¶ 9.)  Ms. Hardy referred Plaintiffs' counsel to the opinions in *Griffin v. Wake County*, 142 F.3d 712, 718 (4th Cir. 1998) (upholding plan that deducted time from available sick leave and vacation balances when employees did not work all scheduled hours because, unlike deductions from base pay, deductions from leave simply do not constitute a violation of section 778.114); *Mitchell v. Abercrombie & Fitch, Co*., 428 F. Supp. 2d 725, 737 (S.D. Ohio 2006) (upholding use of the FWW method where, in weeks that Plaintiffs worked fewer than 40 hours, they received their full salary and their accrued paid benefit time was reduced by the number of hours below 40 so that,

5

In her Declaration, Kraft's counsel Samantha Hardy testifies that after the lunch break at the June 3, 2008 deposition of Ms. Foucher, and before the scheduled depositions of Ms. Potempa and Ms. Beaman, Plaintiffs' counsel contacted her and explained that he had looked at the case law and the department of labor opinion letters and determined that it was in Plaintiffs' best interest to dismiss because the claims lacked a reasonable basis in law.  (Kraft Reply Ex. 1, Hardy Decl. ¶ 10.) Plaintiffs' counsel then agreed to dismiss the Complaint in exchange for Kraft's forbearance in seeking fees and costs.  Kraft's counsel then asked Plaintiffs' counsel to return to the site of the deposition so that the terms of the agreement they had reached could be put on the record.  (*Id.* ¶ 11.) Plaintiffs' counsel returned, the reporter transcribed the details of the dismissal, and Plaintiffs' counsel explained his rationale for agreeing to dismiss the Complaint.  The depositions of the other two Plaintiffs were then canceled, not adjourned, and Kraft's counsel returned to California to prepare the dismissal papers relating to the settlement previously placed on the record.  (*Id.* ¶ 12.)

---

in sum, Plaintiffs received a fixed salary that did not vary with the number of hours worked); Opinion Letter of the Wage and Hour Administrator, 95-99 CCH-WH ¶ 32,457, Department of Labor (Feb. 27, 1995) (ruling that the requirements of 778.114 are met when an employee receives his/her full salary regardless of the fact that deductions are simultaneously made from vacation or sick leave banks because of absences) (copy attached as Ex. 6 Kraft Reply to Mot. Dismiss); Opinion Letter of the Wage and Hour Administrator, 99-02 CCH-WH ¶ 32,812, Department of Labor (Mar. 28, 1996) (ruling that partial or full day absences may be charged against an employee's allowable vacation "bank" as long as the employee receives his or her full salary in any workweek when he or she performs any work) (copy attached as Ex. 7 Kraft Reply to Mot. Dismiss).

As Kraft explains in its Reply to Plaintiffs' Response to its Motion to Dismiss, "when Plaintiffs were absent from work for vacation or illness, Kraft properly charged PTO [paid time off] against Plaintiffs' accrued vacation "bank" and Plaintiffs received their full pay for the week.  This is simply an accounting measure to determine from which "bank" [i.e. holiday, vacation, sick] the paid time will be pulled."  (Kraft Reply Mot. Dismiss 4.)  Plaintiffs' counsel has offered no authority, either by way of its responsive pleading or at the hearing on Kraft's motions, nor any new facts, in support of their position that Kraft is inappropriately utilizing the FWW method.

The following constitutes the "Dismissal Agreement" that was placed on the record that day:

|                  |                                                                                                                                                                                                                                                       |
| ---------------- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| Ms.Hardy:        | Are we on the record? We have come back on the record because during the lunch break, Dr. Silverman called and offered to dismiss the class action with prejudice in exchange for a waiver of fees and costs, and he is going to explain why he decided to do that. |

Mr. Silverman:    Well, first, let's put the details of what *we've agreed to do* on the record, and then I can provide why I think it's wise to do that at this time.

*We've agreed to dismiss with prejudice this lawsuit, which has to do with overtime claims.* And we've also agreed to put on the record that plaintiff Beaman and Potempa do not intend to pursue further discrimination claims against Kraft as alleged or contained in the complaint that they filed with the EEOC, and from which right to file lawsuit letters were issued by the EEOC. However, with respect to those claims, you know, arising out of their employment other than those, we're not waiving that, and we're not agreeing to be prejudiced with respect to those, whatever they may be.

*     *     *

Mr. Reiter:    No. But I think we ought to get to the explanation of why counsel's voluntarily dismissing with prejudice, so the record's clear.

Mr. Silverman:    First of all, I think that there is more than just a mere possibility that a court could rule that this case lacked a reasonable basis in law. Not in fact, but in law.

There are lots of compelling facts, which I needn't go into, and that's just the nature of employment. But on the basis of the law, I can foresee a possibility that a court could find sanctions for this case as of today.

*     *     *

So when I balanced the chances of making new law, convincing the court to somehow change what has been

7

established at least since 1994 against the chances for sanctions, *I think it wise for these three plaintiffs as representatives and in their individual capacity to voluntarily dismiss without costs or fees, or, you know, penalties to anyone, but with prejudice with respect to their overtime claims, and the associated ERISA claim as well in this case. So does that sufficiently explain*?

Mr. Reiter:        *It does, and the parties are agreed.*

Ms. Hardy:        *Agreed.*

Mr. Silverman:    One of the cases, I believe, was *Griffin*, and I believe I gave you the name of the other case.

Mr. Reiter:        *Aiken*, both 4th Circuit opinions, and there was the district court from Ohio was *Abercrombie & Fitch*.

Mr. Silverman:    Tangentially mentioned it, that's correct.

Ms. Hardy:        I believe we're agreed.

Mr. Silverman:    Okay. You're going to send me some releases for each of them to sign; is that correct?

Ms. Hardy:        We'll send you releases.

Mr. Silverman:    Wouldn't you like that?

Ms. Hardy:        Yes.

Mr. Reiter:        Yes.

Mr. Silverman:    I'm trying to make sure the release really does confine it to what we put on the record, because I don't know at this point what else they have in mind, if anything.

Mr. Reiter:        Okay.

Ms. Hardy:        Okay.

*        *        *

Mr. Reiter:        Sounds good. Thanks Mark, appreciate it.

8

Mr. Silverman:          No problem. Thanks for coming in.

(Kraft Mot. Sanctions, Ex. N, Dismissal Agreement, 4:7-5:3; 7:14-25; 8:18-10:2; 11:7-10) (emphasis added).

Kraft argues that this was clearly an agreement on the part of Plaintiffs' counsel, after having done some discovery, to dismiss the Complaint, which alleges violations of FLSA and ERISA based upon claims relating to payment of overtime.

Plaintiffs' counsel does not dispute that this was the recorded agreement of the parties that day but argues that agreeing to "voluntarily dismiss" is different from a "settlement agreement" and that Plaintiffs' counsel was just explaining that day why he thought that he should make an offer to settle. (Pls.'s Resp. 14.) In support of their position, Plaintiffs quote a bit more selectively from the record that day, focusing on Plaintiffs' counsels statements that Plaintiffs were not agreeing to dismiss claims *other than* those in the Complaint relating to the overtime claims under FLSA and ERISA. (Pls.'s Resp. 8-9; 15.) There appears to have been some question about potential disability or other discrimination-based claims that one or more of the Plaintiffs may have wanted to assert in the future. Plaintiffs counsel wanted to make clear on the record that day that Plaintiffs were not agreeing to prejudice their rights to assert claims of this nature in the future. (Kraft Mot. Sanctions Ex. N 5:4-7:10.)

All of the language from the Dismissal Agreement quoted by Plaintiffs in their Response relates to discussions and reservation of rights with respect to claims *other than* the overtime FLSA/ERISA claims contained in the instant Complaint. Kraft agreed with Plaintiffs' counsel that such claims were not covered by the agreement to dismiss and ultimately drafted dismissal documents that fully protected Plaintiffs' rights to pursue such claims. (Kraft Mot. Sanctions Exs.

S, T.)  Protecting such future claims was never an issue of contention between the parties.  Plaintiffs

counsel does not identify any discussion from the record that day that indicates any reservation as

to his intent to dismiss the claims in the Complaint regarding Kraft's method of calculating overtime

under FLSA/ERISA.

###    C.    Communications Following the "Dismissal Agreement"

On June 12, 2009, Kraft's counsel provided counsel for Plaintiffs with proposed releases and

a stipulated order of dismissal. (Kraft Mot. Sanctions Ex. O.)  On June 16, 2009, having had no

response from Plaintiffs' counsel, Kraft's counsel sent another email, again attaching the proposed

documents.  (Kraft Mot. Sanctions Ex. P.)  On June 17, 2009, Plaintiffs' counsel replied in an email,

indicating that he had reviewed the proposed documents with his clients and suggesting some

revisions.   (Kraft Mot. Sanctions Ex. Q.)   In summary, Plaintiffs' counsel had the following

comments: (1) before signing, I need the pay records for Ms. Beaman; (2) remove references to me

(plaintiffs' counsel); (3) add a paragraph stating that plaintiffs have not waived any other claims

against Kraft and that dismissal is without prejudice to any other civil claims not specifically

identified in plaintiffs' complaint (i.e. civil rights claims, etc.); (4) eliminate any reference to unpaid

wages in order to make it clear that plaintiffs are only prejudiced with respect to overtime claims

in FLSA and the ERISA claims specified in the Complaint.  Plaintiffs' counsel closed with the

following: "Ms. Foucher is prepared to sign the new stipulation.  The other two plaintiffs do not

wish to prejudice their other potential claims and, as you and I discussed, the right to sue letters were

issued by the EEOC for the two of them.  Therefore, it is important that you adopt my suggested

revisions."  On June 22, 2009, Kraft's counsel responded that in fact Kraft had previously produced

the Beaman pay records, giving the Bates stamp numbers, and addressing and agreeing to

incorporate language to address each of Plaintiffs' counsel's concerns. (Kraft Mot. Sanctions Ex. R.)

On June 28, 2009, Plaintiffs' counsel responded with a few further remarks (none of which objected to the agreed upon language regarding dismissal with prejudice of the overtime claims in the complaint under FSLA and ERISA) and stated: "My thoughts are written below. It appears we are fine with the changes. Please send the revisions so I can present them to the clients for execution." (Kraft Mot. Sanctions Ex. S.) On July 8, 2009 Kraft's counsel sent another draft of the documents, attempting to incorporate Plaintiffs' counsel's changes, to Plaintiffs' counsel. (Kraft Mot. Sanctions Ex. T.) Having had no response from Plaintiffs' counsel to this last email, Kraft's counsel sent another email on July 15, 2009 seeking execution and return of the documents. (Kraft Mot. Sanctions Ex. U.)

Finally, on July 21, 2009, Plaintiffs' counsel responded with a new wave of objections to the breadth of the release language and specifically to language relating to release of wage and hour claims under Michigan law, all of which had been present in its exact form in all of the prior drafts of the releases and stipulated order, and as to which Plaintiffs' counsel had never posed an objection. (Kraft Mot. Sanctions Ex. V.) In this email, Plaintiffs' counsel confirms that Plaintiffs are agreeing to dismiss all FLSA and ERISA claims, but now interposing an objection as to state law claims. This, of course, directly contradicted Plaintiffs' counsel's earlier agreement to the following language: "Whereas, the parties agree that dismissal of the Complaint is without prejudice to [any other] claims other than claims under the Fair Labor Standards Act or Michigan wage-hour law, such as civil rights claims." (*See* Kraft Mot. Sanctions Ex. T p. 4, ¶ 3 (where Plaintiffs' counsel's only comment on this language was "fine but include 'any other.'").) Plaintiffs' counsel closed this

11

July 21, 2009 email with the statement that he was "open to filing Counter motions for summary judgment at this time." (Kraft Mot. Sanctions Ex. V p. 3.) On July 28, 2009 Kraft's counsel responded again with comments on each of Plaintiffs' counsel's objections and reiterating that the documents as drafted related only to wage and hour claims and claims under ERISA that were alleged in Plaintiffs' Complaint. (Kraft Mot. Sanctions Ex. W.)

On August 3, 2009 Kraft's counsel had a telephone conversation with Plaintiffs' counsel during which Plaintiffs' counsel requested further limitations and gave Kraft seven days to acquiesce before filing a motion for summary judgment. (Kraft Mot. Sanctions Ex. Z Hardy Aff. ¶ 5.) On August 7, 2009, following a telephone conversation between Kraft's counsel and Plaintiffs' counsel, Kraft's counsel again sent revised documents to Plaintiffs' counsel, eliminating reference to state claims (although clearly Plaintiffs' counsel had previously agreed to this) and attempting to address Plaintiffs' counsel's remaining issues. (Kraft Mot. Sanctions Ex. X.) Kraft's counsel never heard further from Plaintiffs' counsel until receiving Plaintiffs' August 17, 2009 motion requesting extension of discovery and motion deadlines, as to which Plaintiffs' counsel never sought concurrence. (Kraft Mot. Sanctions, Ex. Z Hardy Aff. ¶¶ 6-7.)

In their Response, Plaintiffs' do not dispute any of these communications and do not offer any additional communications that contradict any of the correspondence offered by Kraft in support of its motions. Plaintiffs merely deny that they meant what they said in the course of the recorded "Dismissal Agreement" and deny that there was ever agreement between the parties to dismiss any wage-hour FSLA and ERISA claims.


## II.    STANDARDS OF REVIEW

### A.      Enforcing the Settlement Agreement

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Aro Corp. v. Allied Witan Co*., 531 F.2d 1368, 1371 (6th Cir. 1976). A federal court possesses this power "even where the agreement has not been arrived at in the presence of the court nor reduced to writing." *Kukla v. Nat'l Distillers Prods. Co*., 483 F.2d 619, 621 (6th Cir. 1973). Courts are to consider the objective acts of the parties in determining whether an agreement has been reached. *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). "Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *Id*. at 645-46 (citing *Brock v. Scheuner Corp*., 841 F.2d 151, 154 (6th Cir. 1988). Where facts material to an agreement are disputed, an evidentiary hearing is required. *Aro Corp*., *supra* at 1372.

### B.      Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

13

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."
*Id*. at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

###    C.    Sanctions

Under Rule 11 of the Federal Rules of Civil Procedure, the court has discretion to award sanctions (1) when a party presents pleadings, motions or papers to the court for an improper purpose, (2) if the claims, defenses or other legal contentions therein are not warranted by existing law or a nonfrivolous extension of the law, or (3) if the allegations and other factual contentions therein do not have evidentiary support. Fed.R.Civ.P. 11; see *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510 (6th Cir.2002). The test for imposition of Rule 11 sanctions is whether the litigant's conduct was reasonable under the circumstances. *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 507 (6th Cir.1998).  In order to give a party an opportunity to avoid sanctions, Rule 11 contains a "safe harbor" provision that requires a party seeking sanctions to serve its motion on the opposing party at least 21 days prior to filing the motion. Fed.R.Civ.P. 11(c)(2). Here, Kraft has given notice and Plaintiffs contest the Rule 11 allegations and have not withdrawn their claims.  (Kraft Mot. Dismiss 14 n.2.)

## III.   ANALYSIS

Kraft urges this Court to enforce the "Dismissal Agreement" entered into on the record on June 3, 2009 following the deposition of Plaintiff Foucher.[4]  This Court has the power to enforce

---

[4] As an alternative to ordering enforcement of the dismissal agreement, Kraft urges this Court either to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 41(b) (Involuntary Dismissal of Actions) or alternatively to treat its motion as one for summary judgment under Federal Rule of Civil Procedure 56 and dismiss on that basis.  (Kraft Mot. Sanctions 15, n.3.)
      The Court declines to rely on Fed. R. Civ. P. 41(b) but will, as a corollary to granting Kraft's motion for enforcement of the settlement agreement, grant Kraft's motion for summary judgment.

14

agreements in furtherance of settling matters pending before it, even where those agreements have not been reduced to writing, if the objective acts of the parties manifest assent as to all material terms of the agreement. *See Aro, Kukla, Re/Max*, *Brock, supra*. Where facts material to an agreement are disputed, an evidentiary hearing is required. *Aro Corp*., *supra* at 1372. No evidentiary hearing is required however, and summary enforcement is appropriate, where no substantial dispute exists regarding entry into and the terms of an agreement. *Kukla*, *supra* at 621. "The existence of a valid agreement is not diminished by the fact that the parties have yet to memorialize the agreement. When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Re/Max*, *supra* at 646. Courts have specifically upheld agreements memorialized by a court reporter. *Highman v. 31-W Insul. Co., Inc.*, No. 3:04-CV-235, 2006 Dist. LEXIS 67654 (E.D. Tenn. September 20, 2006).

In the present case, this Court need not attempt to divine an agreement from oral statements as it is clear from the recorded Dismissal Agreement that Plaintiff agreed to dismiss the FLSA and ERISA claims which were premised on allegations that Kraft improperly calculated overtime utilizing the FWW. First, the agreement put on the record at the June 3, 2009 deposition of Ms. Foucher was clear and unequivocal as relates to the overtime claims based on FLSA and ERISA. Plaintiffs' counsel clearly articulated the claims he was intending to dismiss, as well as the reasons for dismissing them: "We've agreed to dismiss with prejudice this lawsuit, which has to do with overtime claims. . . . [W]hen I balanced the chances of making new law convincing the court to somehow change what has been established at least since 1994 against the chances for sanctions, I think it is wise for these three plaintiffs as representatives and in their individual capacity to

15

voluntarily dismiss without costs or fees, or, you know, penalties to anyone, but with prejudice with respect to their overtime claims, and the associated ERISA claims as well in this case." (Kraft Mot. Sanctions, Ex. N, Dismissal Agreement, 4:17-18; 8:18-9:1.) Plaintiffs received as consideration protection against fees and costs. Second, the exchange of emails detailed above in section (I)(c), makes clear that Plaintiffs' counsel, subsequent to placing the agreement on the record, accepted the language of the proposed order of dismissal of the overtime/wage-hour FLSA and ERISA claims with one minor change that Kraft ultimately did incorporate. (Kraft Mot. Sanctions, Exs. S, T.) The recorded language of agreement to dismiss, coupled with the strong expression of assent through subsequent communications consistent with such an agreement, is clearly sufficient to show a meeting of the minds on all material terms. *Re/Max*, *supra* at 645.

Plaintiffs attempt to create the appearance of a lack of mutual assent, arguing in their response to Kraft's motion that: "By June 17, 2009, it was becoming apparent to plaintiffs' counsel that the parties did not even remotely agree on essential terms of an agreement to voluntarily dismiss the lawsuit, and were going to be unable to bridge the wide gap between what Kraft wanted and what plaintiffs wanted. One or more of the plaintiffs looked at the all-encompassing broad language of the proposed releases drafted by Kraft, which was never even remotely mentioned in the record of June 3, 2009, and decided that they did not want to dismiss the lawsuit. Further, given the apparent frantic desperation by Kraft's counsel, one or more of the plaintiffs came to believe that Kraft's counsel knew that there were overtime violations of FLSA." (Pls.' Resp. 9-10.) However, this after-the-fact contention is clearly contradicted by the contemporaneous emails exchanged between the parties even after June 17, 2009 when Plaintiffs' counsel stated in emails to Kraft's counsel: "My thoughts are written below. It appears we are fine with the changes. Please send

16

revisions so I can present them to the clients for execution.  Thanks.  Mark." (Kraft's Mot. Sanctions Ex. S.)  This email was sent by Plaintiffs' counsel on June 28, 2009 and proposed only minor changes to the proposed dismissal agreements for each of his clients.  There is no indication that, at this point, "the parties did not even remotely agree on essential terms."  Indeed, just the opposite.  All essential terms, consistent with the agreement placed on the record on June 3, 2009, were agreed to and, additionally, all of the non-essential changes proposed by Plaintiffs' counsel in this June 28, 2009 email were in fact incorporated by Kraft's counsel on the next exchange of emails (Kraft's Mot. Sanctions Ex. T), to which Plaintiffs' counsel never responded.  Moreover, Plaintiffs' further stated reason for backing away from the agreement, i.e. that Kraft's counsel's "frantic desperation" to settle made Plaintiffs think Kraft had something to hide, is nothing more that post-hoc reversal of sentiment, which cannot serve as the basis to defeat such a clear agreement to dismiss the claims. *See Highman supra* at * 8 (recognizing, where plaintiff developed "misgivings" after entering into an oral agreement, that: "After-the-fact sentiments, however, do not merit setting aside an otherwise complete settlement agreement.").

The record contains no evidence that anything occurred after Plaintiffs' counsel put his agreement to dismiss on the record on June 3, 2009 which fundamentally changed the circumstances under which the parties agreed to dismiss.  Plaintiffs obtained no new discovery, they cite to no new law or Department of Labor opinions and do not attempt to explain why Plaintiffs' counsel reversed course from his position that his clients' overtime claims were close to sanctionable to pressing them further before this Court.  This Court finds that Plaintiffs' intent to dismiss their overtime wage-hour FLSA and ERISA claims was clearly stated on the record on June 3, 2009:  "[T]hese three plaintiffs as representatives and in their individual capacity . . . voluntarily dismiss without costs or fees, or

17

. . . penalties to anyone, but with prejudice with respect to their overtime claims, and the associated ERISA claim as well, in this case." (Kraft Mot. Sanctions, Ex. N, Dismissal Agreement, 8:21-9:1.) The Court further finds that the parties have agreed to all material terms of such an agreement and there is no need for this Court to conduct an evidentiary hearing.

## III.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** Kraft's Motion to Enforce Settlement Agreement according to the terms that were placed on the record in a proceeding related to this case on June 3, 2009.   As there remain no issues of genuine material fact on any element of Plaintiffs' Complaint, this Court **GRANTS** Kraft's additional request for Summary Judgment on each of Plaintiffs' claims.   This Court further **DENIES** Kraft's Motion for Sanctions.[5]   This case is therefore dismissed with prejudice.

**IT IS SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: November 30, 2009

---

[5] This Court denies Kraft's motion for sanctions under Federal Rule of Civil Procedure 11, generously affording Plaintiffs' counsel the benefit of the doubt that his further prosecution of this matter was the result of overzealous advocacy and not bad faith.

18

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 30, 2009.

s/Denise Goodine                                    
Case Manager